UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **MAEGAN MARIE BARRAS ET AL** | **CASE NO. 6:19-CV-01411** |
| **VERSUS** | **JUDGE SUMMERHAYS** |
| **MARK GARBER ET AL** | **MAGISTRATE JUDGE WHITEHURST** |

**MEMORANDUM RULING**

Presently before the Court is the Motion to Dismiss Defendants Mark Garber and Paula Smith, Under Rule 12(b)(6) [ECF No. 7]. For the reasons that follow, the Motion is GRANTED IN PART and DENIED IN PART.

## I.
### BACKGROUND

On November 2, 2018, Josh Barras was arrested on misdemeanor charges and transported to the Lafayette Parish Correctional Center ("LPCC") for booking.[1] At the time of his arrest and booking, Barras was allegedly exhibiting "bizarre behavior."[2] During booking, Barras was permitted to enter an LPCC restroom alone and unmonitored for approximately twenty minutes.[3] When LPCC personnel ultimately checked on Barras in the restroom, he had attempted suicide and was unresponsive.[4] He was immediately rushed to Lafayette General Medical Center.[5] Barras allegedly "had a history of mental illness well documented in the medical and institutional records

---

[1] Amended Complaint [ECF No. 5] at ¶7.
[2] *Id.* at ¶¶8-10.
[3] *Id.*
[4] *Id.*
[5] *Id.*

1

of the Lafayette Parish Correctional Center."[6] The Amended Complaint also alleges that "it was known that Josh Barras had attempted suicide previously."[7]

Plaintiff Maegan Barras ("Plaintiff") is Barras' wife. Plaintiff filed the pending Complaint on behalf of Josh Barras against Mark Garber, individually and as the duly elected Sheriff for the Parish of Lafayette, and Paula Smith, individually and in her capacity as Director of Corrections and an employee of the Lafayette Parish Sheriff's Office. Plaintiff seeks damages under 42 U.S.C. § 1983. Plaintiff subsequently filed an Amended Complaint adding a claim for loss of consortium damages. Defendants have now filed the present Motion to Dismiss pursuant to Rule 12(b)(6).

## II.
## RULE 12(B)(6) STANDARD

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"[8] The facts alleged, taken as true, must state a claim that is plausible on its face.[9] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] A complaint is not sufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action."[11]

---

[6] *Id.* at ¶11.
[7] *Id.* at ¶ 9.
[8] *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-57 (2007).
[9] *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80 (2009).
[11] *Id.* (quoting *Twombly*, 550 U.S. at 554-57).

## III.
## LAW AND ANALYSIS

### A. Plaintiff's Capacity to Sue.

The Amended Complaint alleges that Maegan Barras is the "wife and appointed Tutrix" of Josh Barras.[12] Under Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of an individual to sue in a representative capacity is determined by the law of the state in which the District Court is located.[13] Under Louisiana law, tutorship refers to the guardianship of unemancipated minor children whose parents dissolve their marriage or are unmarried.[14] There is no provision in Louisiana law in which a tutor/tutrix may be appointed for a spouse. In the instant suit, Maegan Barras has alleged that her capacity to sue on behalf of her husband stems from a tutorship proceeding. This allegation of her representative capacity is not cognizable under Louisiana law. Plaintiff has responded and indicates that the reference to "tutrix" was simply incorrect language and that she does, in fact, have a court order appointing her to handle the affairs of Josh Barras. Plaintiff must correctly plead capacity to proceed with this case. Accordingly, the Court grants the Motion to Dismiss with respect to capacity but will grant leave to amend the complaint to correct Plaintiff's capacity allegations.

### B. Individual Capacity Claims Against Smith and Garber.

An official's "episodic act or omission violates a pretrial detainee's due process rights to medical care [and protection from harm] if the official acts with subjective deliberate indifference to the detainee's rights."[15] In this context, deliberate indifference requires a showing that "(1) the official was aware of facts from which an inference of substantial risk of serious harm could be

---

[12] Amended Complaint at ¶3.
[13] F.R.C.P. 17(b)(3).
[14] LSA-C.C. 246, LSA-C.C. 256.
[15] *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir.1996).

3

drawn; (2) the official actually drew that inference; and (3) the official's response indicates the official subjectively intended that harm occur."[16] In contrast to an official capacity claim, a claim against an official in his or her individual capacity requires a plaintiff to "allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusory assertions: the plaintiff must allege specific facts giving rise to the constitutional claims."[17] In other words, a plaintiff "must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant."[18] Supervisory officials may be held liable for a section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."[19]

Plaintiff fails to allege any facts showing that the defendants were personally involved in the events leading up to Barras' attempted suicide. Nor do Plaintiff's allegations show that the defendants had knowledge of any facts from which they could have drawn the inference of a substantial risk of serious harm. Accordingly, Plaintiff's Amended Complaint fails to state a claim against Sheriff Garber and Paula Smith in their individual capacities. The Court therefore grants the Motion to Dismiss with respect to the individual capacity claims against Smith and Garber.[20]

---

[16] *Brumfield v. Hollins*, 551 F.3d 322 (5th Cir. 2008), citing *Thompson v. Upshur County, TX,* 245 F.3d 447 (5th Cir. 2001).
[17] *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002).
[18] *Jolly v. Klein,* 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar,* 950 F.2d 290, 292 (5th Cir.1992)).
[19] *Thompkins,* 828 F.2d at 304.
[20] Defendants assert qualified immunity with respect to Plaintiff's individual capacity claims. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982)). When a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*). Qualified immunity is "immunity from suit rather than a mere defense to liability" and should, therefore, be resolved at the earliest possible stage in the litigation. *Id.*; *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011). Here, however, the Court concludes that Plaintiff has not stated individual capacity claims against the defendants regardless of the question of qualified immunity. Moreover, as explained further below, the court will not grant leave to replead these individual capacity claims. Therefore, the Court will not address qualified immunity at this time.

### C. Official Capacity Claims against Paula Smith.

Plaintiff names Paula Smith as a defendant "in her official capacity as a Director of Corrections and an employee of the Lafayette Parish Sheriff's Office."[21] Claims against an official in his or her official capacity are "only another way of pleading an action against an entity of which an officer is an agent."[22] A governmental entity such as the Lafayette Parish Sherriff's Office may not be held liable under section 1983 for the violation of constitutional rights on a theory of vicarious liability.[23] It may, however, be liable under *Monell* when allegedly unconstitutional conduct "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[24] To state a claim of liability under section 1983, a Plaintiff must allege facts that plausibly establish that an official policy ***was promulgated by the municipal policymaker***.[25] That policymaker must have "final policymaking authority."[26] State law guides the determination as to the official whose decisions represent the official policy of the local government unit.[27] Under Louisiana law, the sheriff is the "chief law enforcement officer in the parish," and also "the keeper of the public jail of his parish."[28] In contrast, a Director of Corrections, like Smith, is not a final policymaker for the Sheriff's Office or the parish jail.[29] As such, claims against Smith in her official capacity must be dismissed.

---

[21] Amended Complaint, Document 5, ¶4.
[22] *Hafer v. Melo*, 502 U.S. 21 (1991); *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005).
[23] *Hicks-Fields v. Harris Cty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017), *cert. denied sub nom. Hicks-Fields v. Harris Cty., Tex.*, ___ U.S. ___, 138 S. Ct. 510 (2017).
[24] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).
[25] *Blanchard-Daigle v. Geers*, No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020) (emphasis added).
[26] *See Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009)
[27] *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989).
[28] La. Const. art. 5 § 27; La.Rev.Stat. § 15:704
[29] *Jones v. St. Tammany Parish Jail*, 4 F.Supp.2d 606, 614 (E.D. La. May 8, 1998).

### D. Official Capacity Claims Against Mark Garber.

In contrast, Sheriff Garber does have final policymaking authority over the Sheriff's Office and the LPCC.[30] He can, therefore, be sued in his official capacity and those claims are treated as claims against the governmental entity he represents. To state a claim of liability under section 1983, a Plaintiff must allege facts that plausibly establish that (1) an official policy, (2) that was promulgated by the municipal policymaker, (3) was the moving force behind the violation of a constitutional right.[31] The requirement of an official policy may be satisfied by proof of an "official policy or custom that deprives individuals of their constitutional rights" or "a persistent, widespread practice which, although not officially promulgated, is so common and well settled as to constitute a custom that fairly represents municipal policy."[32] The requirement may also be satisfied by evidence that the conduct of the policymaker itself may have violated a person's constitutional right.[33] Finally, the requirement may be met by evidence of a policymaker's failure to take some affirmative action that rises to the level of "deliberate indifference."[34]

Here, Barras was a pre-trial detainee who was brought to the LPCC following his misdemeanor arrest. A pre-trial detainee has procedural and substantive due process rights under the Fourteenth Amendment. The Fourteenth Amendment does not confer an absolute right to a psychological examination, nor does it impose liability for failing to "detect *latent* suicidal tendencies..."[35] The Fourteenth Amendment does, however, confer the right to medical care and the right to be protected from *known* or *obvious* suicidal tendencies.[36] Violations of a pre-trial

---

[30] La. Const. art. 5 § 27; La.Rev.Stat. § 15:704
[31] *Blanchard-Daigle v. Geers,* No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020).
[32] Esteves, 106 F.3d at 677 (citing Monell, 436 U.S. at 694); Bennett v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (en banc), *cert. denied*, 472 U.S. 1016 (1985)).
[33] *See Burge*, 187 F.3d at 471.
[34] *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989).
[35] *Evans v. City Marlin, Tx.*, 986 F.2d 104, 107-08 (5th Cir. 1993) (citing *Burns v. City of Galveston,* 905 F.2d 100 (5th Cir. 1990)) (emphasis in original).
[36] *Sanchez v. Young County, Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997)) (emphasis added).

detainee's rights under the Fourteenth Amendment generally fall into two categories: Episodic-Acts-or-Omissions claims or Conditions-of-Confinement claims.[37] Plaintiff does not identify which of these claims she is asserting against Sheriff Garber in his official capacity. Her allegations, like those in *Sanchez*, fall into three broad categories of violations: (1) the failure to properly assess and classify Barras' risk for suicide; (2) the failure to properly monitor Barras once he arrived at the LPCC; and (3) the failure to adequately train LPCC staff on assessing detainees' suicide risks and properly applying LPCC policies regarding detainees with mental health problems.[38] Of these claims, plaintiff's failure-to-train claim must be analyzed as an Episodic-Acts-or-Omissions claim.[39]

The Court will first analyze Plaintiff's allegations as an Episodic-Acts-or-Omissions claim. To state such a claim against a municipality, a plaintiff must show, first, that municipal officials acted or failed to act with deliberate indifference to a detainee's needs.[40] Second, the plaintiff must show that these acts resulted from "a municipal policy or custom, adopted with objective indifference to the detainee's constitutional rights."[41] In the context of a detainee suicide (or, presumably, attempted suicide) case, the first element of this claim requires proof that jail officials "gained actual knowledge of the substantial risk of suicide and responded

---

[37] *Sanchez*, 956 F.3d at 791 (citing *Hare*, 74 F.3d at 639).
[38] Amended Complaint at ¶¶13,14. In her complaint, plaintiff also refers to a failure to "transports offenders to medical/mental health facilities adequately equipped to properly observe, evaluate and treat/...." "allowing untrained non-medical staff to make decisions regarding when offenders are transported out of the facility for medical treatment." *Id.* at 14. However, when pleading the specific facts of this case, plaintiff makes no mention that Barras was injured as a result of either of these lapses. Indeed, when Barras was found unresponsive he was "immediately rushed to Lafayette Medical Center." Accordingly, it is unclear whether plaintiff is seeking to assert a claim based on the medical treatment Barras received after he was found unconscious. To the extent that she is asserting such a claim, she has not asserted a claim because she has not shown any connection between any such lapses and the harm suffered by Barras.
[39] *Sanchez*, 956 F.3d at 792 ("Failure-to-Train claims are not Conditions-of-Confinement claims....").
[40] *Sanchez*, 866 F.3d at 279.
[41] *Id.* (citing *Hare*, 794 F.3d at 649 n.4).

7

with deliberate indifference."[42] This standard requires proof that a prison official knows of an excessive risk of harm and nevertheless disregards that risk.[43]

Here, Plaintiff alleges that LPCC personnel were deliberately indifferent to Barras' known suicidal tendencies when they allowed him to enter a restroom alone and unsupervised for at least 20 minutes. Plaintiff alleges that Barras' prior suicide attempts were known.[44] She also alleges that Barras "had a history of mental illness well documented in the medical and institutional records of the Lafayette Parish Correctional Center...."[45] She further alleges that at the time of his arrest, Barras was "exhibiting bizarre behavior which continued until the time of his suicide attempt."[46] Plaintiff alleges that, despite knowledge of Barras' mental health history, bizarre behavior, and prior suicide attempts, LPCC personnel failed to properly monitor him. Plaintiff alleges that Barras was not placed within the "specialized unit within the Lafayette Parish Correctional Center renovated and designed to provided twenty-four hour direct supervision to offenders with medical and mental health needs," but was instead "left unattended in a restroom for an outrageous amount of time without being adequately monitored."[47] These allegations are sufficient to plead the "deliberate indifference" prong of an Episodic-Acts-or-Omissions claim and survive dismissal at the pleading state.

With respect to the second element of this claim—that the constitutional violation resulted from a municipal policy or custom adopted with objective indifference to the detainee's constitutional rights— a plaintiff must allege facts that plausibly establish that (1) an official policy, (2) that was promulgated by the municipal policymaker, (3) was the moving force behind

---

[42] *Hare*, 74 F.3d at 650.
[43] *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003) (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).
[44] Amended Complaint at ¶ 9.
[45] *Id.* at ¶ 11.
[46] *Id.* at ¶ 8.
[47] *Id.* at ¶ 13.

the violation of a constitutional right.[48] Official policies may exist in the form of "written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy."[49] A plaintiff alleging a practice so common and well-settled as to represent municipal policy must show a pattern of conduct that is specific and similar to the constitutional violation alleged by the plaintiff.[50] The court's analysis in *Thomas v. City of Galveston*[51] provides a useful framework for applying this pleading standard. According to *Thomas*, a plaintiff is not required to "specifically state what the policy is, as the plaintiff will generally not have access to it."[52] However, the plaintiff must plead more than "generic, boilerplate recitations of the elements of claims against a municipality for an unconstitutional custom or practice, failure to adequately train or supervise, and negligent hiring of officials."[53] The plaintiff's allegations must provide *fair notice* to the defendant with respect to the specific policies or customs that are being challenged.[54] For example, "allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, ***or the specific topic of the challenged policy or training inadequacy***."[55]

Plaintiff cites a number of *de facto* LPCC policies or customs that allegedly resulted in the violation of Barras' constitutional rights:

---

[48] *Blanchard-Daigle v. Geers*, No. 18-51022, 2020 WL 730586, at *2 (5th Cir. Feb. 12, 2020).
[49] *Id.*
[50] *Hicks-Fields*, 860 F.3d at 810.
[51] 800 F. Supp. 2d 826, 843 (S.D. Tex. 2011).
[52] *Id.* at 844.
[53] *Id.* at 845.
[54] *Id.* at 844.
[55] *Id.* (footnotes omitted) (emphasis added).

    (a)    Operating and understaffed and/or inadequately staffed facility;

    (b)    Operating the facility in a manner which is was not designed to be operated in and which has led to reduced contact between staff and offenders;

    (c)    Failing to properly man surveillance post;

    (d)    Negligent retention of staff;

    (e)    Failing to adequately train, supervise, monitor and discipline deputies in the need for and the manner in which to observe and evaluate offenders to identify their needs for medical/mental health treatment, and in the need to and the manner in which to provide proper medical treatment in connection with those needs so identified;

    (f)    Failing to properly monitor inmates;

    (g)    Failing to properly maintain surveillance systems for monitoring offenders;

    (h)    Failing to regularly and properly conduct rounds to check on the well-being of offenders.[56]

Plaintiff further alleges that jail employees were deliberately indifferent by failing to "devise, adopt, implement and/or carry-out a custom practice, policies, and/or procedures including.... (a) medical procedure to ensure the safety and well-being of Josh Barras; and (b) mental health procedures to ensure the safety and well-being of Josh Barras."[57] These allegations identify the "specific topic of the challenged policy or training inadequacy" and therefore provide "fair notice" to the defendants as far as the specific policies or customs challenged.[58] They also identify the specific training inadequacy that resulted in a violation of Barras' constitutional rights.

---

[56] *Id.* at ¶ 14.
[57] *Id.*
[58] *Thomas*, 800 F. Supp. 2d at 843.

Accordingly, Plaintiff has stated an Episodic-Acts-or-Omissions claim sufficient to survive dismissal at the pleading stage.[59]

To state a Conditions-of-Confinement claim, "a plaintiff must show a condition—a 'rule,' a 'restriction,' an 'identifiable intended condition or practice,' or 'sufficiently extended or pervasive' 'acts or omissions' of jail officials—that is not reasonably related to a legitimate government objective and that caused the constitutional violation."[60] Here, Plaintiff specifically identifies the policies or practices that allegedly violated Barras' constitutional rights. She further alleges that jail officials were deliberately indifferent to Barras' known suicidal tendencies and mental health condition. These allegations in the Amended Complaint are sufficient to state a Conditions-of-Confinement claim at the pleading stage. The Motion to Dismiss is therefore denied with respect to the Episodic-Acts-Or-Omissions and Conditions-of-Confinement claims asserted against Sheriff Garber in his official capacity.

**D. Negligence Claims.**

Paragraph 15 of the Amended Complaint purportedly attempts to allege negligence claims against Sheriff Garber in his official capacity. Specifically, Plaintiff alleges that, "[p]rior to and during the time period of November 2, 2018, the defendants **negligently** devised, adopted, implemented and carried out a custom, practice, or policy or policies…"[61] The law is clear that a plaintiff claiming deprivation of his constitutional rights under § 1983 must show deliberate

---

[59] Defendants argue that Plaintiff's allegations about a defective surveillance system does not support a claim against Sheriff Garber in his official capacity because a "claim for improper maintenance of the jail … is only properly raised against the parish governing authority." Defendants" Memorandum in Support of Motion to Dismiss [ECF No. 7-1] at 9. The court has previously rejected this argument. In *Noel v. Gibson*, No. 18-CV-01217, 2020 WL 5227464 (W.D. La. Sept. 1, 2020), the Court held that while a parish's governing authority "is obligated to provide adequate funding to maintain the Parish Jail, Louisiana law imposes no duty on the Police Jury to perform actual maintenance to the Jail's security system." Rather, the "operation and functioning of a jail's security system involves the daily management and operation of the jail, and thus falls under the authority of the parish sheriff." *Id.*
[60] *Sanchez*, 956 F.3d at 791 (quoting *Duvall v. Dallas County*, 631 F.3d 203, 207 (5th Cir. 2011)).
[61] *Id.* at ¶ 15, emphasis added.

indifference, "which entails something more than mere negligence."[62] Further, "…negligence, even gross negligence, does not implicate the Constitution and does not provide a basis for a § 1983 claim."[63] The Fifth Circuit has recognized that, "it is well settled that mere negligence does not constitute a deprivation of due process under the Constitution."[64] Plaintiff's claims of negligence in the instant suit cannot, therefore, state a viable section 1983 claim. Accordingly, any claims grounded on negligence must be dismissed for failure to state a claim for which relief may be granted.

### E. Loss of Consortium Claim and Funeral Expenses.

Turning to Plaintiff's loss of consortium claim, Defendants argue that this damages claim is not cognizable under section 1983. They argue that, under Louisiana law, lost of consortium damages are derivative claims arising from a successful state law tort claim brought by a spouse.[65] Defendants contend that this damage claim is inapplicable here because Plaintiff has not asserted a state law tort claim.[66] The Court agrees that Plaintiff's loss of consortium claim is not viable in this action. Plaintiff asserts only claims under section 1983. The Fifth Circuit has held that a third-party "may not assert a civil rights claim based on the civil rights violations of another individual."[67] Accordingly, the Court grants the Motion to Dismiss with respect to Plaintiff's loss of consortium claim.

---

[62] *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811, 823 (1994).
[63] *Sheppard v. Hawkins*, 2012 WL 6020037 (W.D. La. 11/9/12), citing *Farmer v. Brennan*.
[64] *Doe v. Taylor Indep. Sch. Dist.*, 975 F.2d 137, 142 (5th Cir. 1992), reversed on other grounds, 15 F.3d 443 (5th Cir. 1994).
[65] Memorandum in Support of Motion to Dismiss [ECF No. 7-1] at 16-17.
[66] *Id.*
[67] *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Circuit 1986)). While Barker was not a section 1983 case, Coon was a section 1983 case.

Plaintiff further alleges damages for funeral expenses and for "all damages allowed" under Louisiana Civil Code Articles 2315.1 and 2315.2.[68] Article 2315.1 is the basis for a survival action under Louisiana law, and Article 2315.2 is the basis for a wrongful death action under Louisiana law. Each of these provisions require that the person allegedly injured by the acts of another have died. The Amended Complaint, however, alleges that Josh Barras suffered "severe injury and incapacitation," and that he "attempted suicide"; though the Amended Complaint refers to his "injuries and/or death" in one paragraph,[69] all other allegations of the Complaint refer to his alleged injury and incapacity. Based on the face of the Amended Complaint, Josh Barras allegedly suffered injury and allegedly became incapacitated as a result of his attempted suicide on November 2, 2018. The Amended Complaint fails to state a claim for funeral expenses or for a wrongful death or survival action and those claims must be dismissed.

### F. Leave to Amend.

Rule 15(a) of the Federal Rules of Civil Procedure provides that courts should "freely" grant leave to amend when "justice so requires." But this "generous standard is tempered by the necessary power of a district court to manage a case."[70] One key exception to this generous standard is where the amendment would be futile.[71] In determining futility, courts "apply the same standard of legal sufficiency as applies to Rule 12(b)(6)."[72] In other words, if an amendment would be subject to the same grounds of dismissal as under a defendant's original Rule 12(b)(6) motion, amendment would be futile, and the court should deny leave to amend.

---

[68] *Id.* at ¶ 16.
[69] *Id.* at ¶ 14.
[70] *Priester v. J. P. Morgan Chase Bank, N.A.*, 708 F.3d 667, 678 (5th Cir. 2013).
[71] *See Stripling v. Jordan Production Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).
[72] *Id.*

The Court has granted the Motion to Dismiss with respect to (1) Plaintiff's claims against Smith and Garber in their individual capacities; (2) Plaintiff's claims against Smith in her official capacity; (3) Plaintiff's negligence claims; (3) Plaintiff's loss of consortium claim and claim for funeral expenses; and (4) Plaintiff's capacity to sue allegations. The Court denies leave to replead the individual capacity claims, the negligence claims, the loss of consortium and funeral expense claims, and the official capacity claim against Smith. Plaintiff has already had one opportunity to replead her complaint. Moreover, she has not explained how an amendment could cure the pleading defects outlined above. As a result, the Court concludes that leave to amend these claims would be futile. The Court, however, grants Plaintiff leave to replead her complaint to properly assert capacity to sue.

### III.
### CONCLUSION

For the reasons stated above, the Motion to Dismiss Defendants Mark Garber and Paula Smith, Under Rule 12(b)(6) [ECF No. 7] is GRANTED IN PART and DENIED IN PART. All claims against Paula Smith in her official capacity are DISMISSED WITH PREJUDICE. All claims against Mark Garber and Paula Smith in their individual capacities are DISMISSED WITH PREJUDICE.  All negligence claims against Mark Garber in his official capacity are DISMISSED WITH PREJUDICE. Plaintiff's loss of consortium and funeral expense claim is DISMISSED WITH PREJUDICE. Plaintiff shall file an amended complaint within 30 days to properly allege her capacity to sue. In all other respects, the Motion to Dismiss is DENIED.

THUS DONE in Chambers on this  25th  day of September, 2020.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE